**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Plaintiff,

                                    Case No. 05-CV-72618-DT

v.

MAURICE CONVERSE, M.D.,

      Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S "MOTION FOR DISMISSAL
BASED ON LACK OF PERSONAL JURISDICTION;" DENYING AS MOOT
DEFENDANT'S "MOTION FOR DISMISSAL BASED ON FRCP 12(B)(6);"
AND DISMISSING CASE FOR LACK OF PERSONAL JURISDICTION**

Pending before the court are two motions to dismiss, filed by Defendant Maurice

Converse, M.D. on July 29, 2005: (1) a "Motion . . . for Dismissal Based on Lack of

Personal Jurisdiction;" and (2) a "Motion for Dismissal Based on FRCP 12(b)(6)."  The

matters have been fully briefed and the court conducted an on the record telephone

conference regarding the jurisdictional motion on September 28, 2005.  As discussed

during the conference, any additional hearing is not necessary.  *See* E.D. Mich. LR

7.1(e)(2).  For the reasons stated below, the court will dismiss this action for lack of

personal jurisdiction.

**I.  BACKGROUND**

Plaintiff State Farm Automobile Insurance Company ("State Farm") initiated this

action on June 30, 2005.  State Farm's one-count complaint asserts that Defendant

Maurice Converse, M.D., committed fraud upon State Farm in relation to the submission

of medical bills for various treatments received by Dr. Converse's patient, Sherri

Anderson.  State Farm was required by the Michigan No-Fault Act to extend coverage

to Ms. Anderson due to her involvement in an automobile accident on or about

December 3, 1999.  (Compl. at ¶ 5.)  According to State Farm, Dr. Converse submitted

bills for medical services he provided to Ms. Anderson which were not medically

necessary.  (Compl. at ¶¶ 7-9.)

　　　With respect to the personal jurisdiction analysis, State Farm's complaint alleges

that Dr. Converse "is a resident of the State of Ohio, maintaining his principal or

registered business office in the City of Toledo, Ohio, and, further, that he has submitted

numerous billings for services allegedly compensable under the Michigan No-Fault to

the Plaintiff in the State of Michigan for the payment of services allegedly rendered to a

Michigan resident, Sherri Anderson."  (Compl. at ¶ 2.)

　　　In his motion to dismiss, however, Dr. Converse asserts that he himself never

submitted any bills to State Farm on behalf of Ms. Anderson.  (Converse Aff. at ¶ 12.)

He further states that all of the treatment he provided to Ms. Anderson was provided in

Ohio.  (*Id.* at ¶ 5.)  Indeed, Dr. Converse does not have a current and active license to

practice medicine in Michigan, conducts no business in Michigan, and maintains no

business presence in Michigan.  (*Id.* at ¶ 4.)  While he used to be an anesthesiologist in

Michigan, he has not been employed in Michigan since 1998.  (*Id.* at ¶ 9.)

　　　In 2001, Dr. Converse hired a third-party claims administrator, ClaimsPro HFS

LLC, to provide billing services in relation to the treatment Dr. Converse was giving Ms.

Anderson.  (Hawkins Aff. at ¶ 4.)  According to Sharon Hawkins, the owner of

ClaimsPro, ClaimsPro never submitted any bills on behalf of Dr. Converse directly to

State Farm, or any other insurance Company in the State of Michigan.  (*Id.* at  ¶¶ 6-7.)

Instead, Ms. Hawkins avers that "ClaimsPro submitted bills on behalf of Dr. Converse to

Anthem Blue Cross and Blue Shield.  Anthem Blue Cross and Blue Shield is an Ohio

corporation, and all bills were submitted to an office of Anthem located in the state of

Ohio."  (*Id.* at ¶ 5.)

State Farm maintains that ClaimsPro did indeed submit bills directly to State

Farm in Michigan.  (Pl.'s Resp. Br. at 2.)  As evidence, State Farm points to various

letters sent by ClaimsPro: an August 21, 2001 letter sent to State Farm, at Ms.

Anderson's request; an April 21, 2001 letter sent to State Farm, at Ms. Anderson's

request; an April 10, 2003 cover fax sent to State Farm, apparently at State Farm's

request; and an April 30, 2003 letter sent to Michigan Blue Cross/Blue Shield.  (Letters

attached to Def.'s Br. as Ex. 1.)

State Farm has also submitted an attending physician's report, which Dr.

Converse completed and returned to State Farm on or around June 6, 2002.  (*See*

6/6/02 Report, attached to Def.'s Br. as Ex. 2.)  The attending physician's form is a

standardized form prepared by State Farm and states at the top:

> To assist us in determining benefits due under the Michigan motor vehicle no-
> fault law, the attending physician must complete this report.  You are required to
> provide this information in accordance with the Michigan motor vehicle no-fault
> insurance law.  P.A. 284 of the Public Act of 1972.

(*Id.*)  Finally, State Farm also relies upon a May 15, 2002 letter which Dr. Converse

wrote to State Farm "in response to [State Farm's] letter to me and to Ms. Anderson

dated April 11, 2002, and as a rebuttal to your conclusion and that of Dr. Mitchell,

whose report has been duly noted."  (*See* 5/15/02 Letter, attached to Def.'s Br. as Ex.

3.)  The letter explains Dr. Converse's treatment of Ms. Mitchell, and attempts to discredit the report of State Farm's physician which Dr. Converse apparently received from State Farm.

On September 29, 2005, in lieu of an evidentiary hearing, State Farm filed a supplemental brief which attached the evidence State Farm would have presented at an evidentiary hearing.  Specifically, State Farm submitted an excerpt from Dr. Converse's deposition transcript from a related state court proceeding.  The transcript essentially authenticates the evidence already submitted to the court by verifying that Dr. Converse wrote a letter to State Farm in response to the report of State Farm's doctor, Dr. Mitchell.  (*See* Converse Depo. at 53-54.)  Further, it also indicates that Dr. Converse sent copies of his chart to State Farm, at State Farm's request.  (*Id.* at 54.)

## II.  STANDARD

If a district court lacks jurisdiction over the defendants, dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(2).  "The burden of establishing jurisdiction is on the plaintiff."  *Tobin v. Astra Pharm. Prod., Inc.*, 993 F.2d 528, 543 (6th Cir. 1993).  The court has three procedural options when presented with a motion to dismiss filed under Rule 12(b)(2).  It may decide the motion upon the affidavits alone, it may allow discovery in aid of deciding the motion, or it may conduct an evidentiary hearing to resolve factual questions.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 770 (E.D. Mich. 2001).

When the district court holds an evidentiary hearing to determine whether it may

exercise personal jurisdiction over the defendant, the plaintiff must make more than just

a *prima facie* showing of jurisdiction.[1]  *Youn v. Track, Inc.,* 324 F.3d 409, 417 (6th Cir.

2003) (citing *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887-88 (6th Cir.

2002)).  Plaintiff must establish jurisdiction by a preponderance of the evidence.  *Id.*

(citing *Serras v. First Tenn. Bank Nat. Ass'n.,* 875 F.2d 1212, 1214 (6th Cir.1989)).

## III.  DISCUSSION

Plaintiff has filed two motions for dismissal, one based on Federal Rule of Civil

Procedure 12(b)(2) (lack of personal jurisdiction) and one based on Federal Rule of Civil

Procedure 12(b)(6) (failure to state a claim upon which relief can be granted).   The

court will first address the jurisdictional motion first.  *See Logan Farms v. HBH, Inc. DE*,

282 F. Supp. 2d 776, 785 (S.D. Ohio 2003) (citing *Combs v. Bakker*, 886 F.2d 673, 675

(4th Cir.1989) ("The general rule is that the district court should resolve jurisdictional

issues before moving on to the merits.").

---

[1]  The court scheduled an evidentiary hearing to occur on September 28, 2005.
After neither counsel appeared for the hearing, the court conducted an on the record
telephone conference.  Counsel stated that they had not received notice of the
evidentiary hearing, but that they did not intend to submit much additional evidence at
an evidentiary hearing.  The court inquired if it would thus be more efficient and less
costly to merely file any additional evidence for the court's review.  Counsel agreed, and
stipulated, in effect,  to conduct an evidentiary hearing on the papers.  The court
allowed the parties, and more specifically Plaintiff, an opportunity to submit any
additional evidence, which Plaintiff did on September 29.  Thus, the court will analyze
the evidence submitted under Plaintiff's heightened burden of proof when an evidentiary
hearing is conducted.

## A.  Personal Jurisdiction Standard

A federal court's exercise of jurisdiction over litigants in a diversity of citizenship case must be both "(1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment."  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002).

Where, as in this case, the state's long-arm statute extends to the limits of the Due Process Clause, the two inquiries merge.  *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996); *Sports Authority Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 810 (E.D. Mich. 2000) ("The Michigan Supreme Court has construed Michigan's long-arm statute to bestow the broadest possible grant of personal jurisdiction consistent with due process.") (citing *Sifers v. Horen,* 188 N.W.2d 623 (Mich. 1971)); *see also Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1236 (6th Cir. 1981) (Michigan long-arm statute confers "on the state courts that maximum scope of personal jurisdiction permitted by the Due Process Clause of the Fourteenth Amendment.").

Due process is satisfied if the defendant has "sufficient minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fairplay and substantial justice."  *Internat'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (citation omitted).  In analyzing the due process limits on personal jurisdiction, courts distinguish two different means for exercising jurisdiction: general jurisdiction and specific jurisdiction.  *Conti v. Pneumatic Prods., Corp.*, 977 F.2d 978, 981 (6th Cir. 1992).  There does not appear to be any dispute that Defendant is not

subject to general jurisdiction in Michigan.[2]   Rather, the parties focus on whether there

is specific jurisdiction over Defendant in Michigan.

"[I]t is essential in each case that there be some act by which the defendant

purposefully avails itself of the privilege of conducting activities within the forum State,

thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S.

235, 253 (1958).  Ultimately, the defendant's conduct and connection with the forum

must be such that he "should reasonably anticipate being haled into court there."

*Burger King Corp. v. Rudzewicz*, 471 U.S. 474 (1985).  The Sixth Circuit has formulated

the following three-part test to capture the due process considerations for specific

personal jurisdiction (the "*Mohasco* factors"):

> First, the defendant must purposefully avail himself of the privilege of
> acting in the forum state or causing a consequence in the forum state.
> Second, the cause of action must arise from the defendant's activities
> there. Finally, the acts of the defendant or consequences caused by the
> defendant must have a substantial enough connection with the forum state
> to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### B.  Personal Jurisdiction Analysis

Plaintiff has not persuaded the court that Defendant "purposefully availed"

himself of the privilege of acting in Michigan or causing a consequence in Michigan.

> A purposeful availment is something akin either to deliberate undertaking
> to do or cause an act to be done in Michigan or conduct which can be
> properly regarded as a primate generating cause of the effects resulting in

---

[2] General jurisdiction is proper only when a defendant's contacts with the forum
state are continuous and systematic, permitting the court to exercise personal
jurisdiction over the defendant even if the action is unrelated to the defendant's contacts
with the state.  *Helicoperos Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984);
*Youn v. Track, Inc.*, 324 F.3d 409, 418 (6th Cir. 2003); *Bird*, 289 F.3d at 873.

Michigan, something more than passive availment of Michigan opportunities. The defendant will have reason to foresee being "haled before" a Michigan court.

*Witbeck v. Bill Cody's Ranch Inn,* 411 N.W.2d 439, 444 (Mich. 1987) (citation omitted).

Here, the actions to which State Farm points in order to establish purposeful availment are simply too attenuated to satisfy due process.

First, the court finds that the correspondence which ClaimsPro sent to Michigan is insufficient to exercise personal jurisdiction over Dr. Converse.  It is undisputed that these letters were not sent by Dr. Converse, but by ClaimsPro.  The Supreme Court has specifically indicated that the purposeful availment analysis must focus on the defendant's *own* conduct, not the conduct of others.  *See Burger King Corp.*, 471 U.S. at 475  (citations omitted) (holding that defendant cannot be haled into a jurisdiction as a result of the "'unilateral activity of another party or a third person.'").   In *Burger King*, the Court held that  "[j]urisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state."  *Id.* (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (emphasis in original)).  Here these letters were written and sent by ClaimsPro, not by Dr. Converse.

Moreover, with the exception of the April 30, 2003 letter,[3] these letters were all sent by ClaimsPro *at the request of either Ms. Anderson or State Farm*.  Similarly, the June 6, 2002 attending physician's report was completed by Dr. Converse at State

---

[3]  The April 30, 2003 letter was sent by ClaimsPro not to State Farm, but to Michigan Blue Cross/Blue Shield, and bears little relevance to the court's analysis.

Farm's request,[4] the May 15, 2002 letter was sent by Dr. Converse in response and

rebuttal to State Farm's doctor's report, and the charts which Dr. Converse sent to State

Farm were sent at State Farm's direct request.  (*See* Exs. 2 & 3 to Def.'s Br; *see also*

Converse Depo. at 53-54.)  The Sixth Circuit has held that a defendant must do more

than respond to requests or solicitations of Michigan residents in order to satisfy the

"purposeful availment" requirement.  *See Kerry Steel, Inc. v. Paragon Industries, Inc.,*

106 F.3d 147 (6th Cir. 1997).  *Id.* at 151 ("It was [plaintiff] that initially contacted

[defendant] in Oklahoma--and [defendant] responded without leaving home, as it

were.").

Finally, the letters and documents on which State Farm relies are simply too

random and fortuitous to establish purposeful availment .  *See Burger King Corp.*, 471

U.S. at 475 (citations omitted) ("The '"purposeful availment requirement ensures that a

defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,'

or 'attenuated' contacts . . . .'").  As the Sixth Circuit has repeatedly held, "[t]he

telephone calls and letters on which the plaintiff's claim of jurisdiction primarily depends

strike us as precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the

*Burger King* Court rejected as a basis for haling non-resident defendants into foreign

jurisdictions." *Kerry Steel, Inc. v. Paragon Industries, Inc.* 106 F.3d 147, 151 (6th Cir.

1997) (quoting *LAK, Inc. v. Deer Creek Enter.,* 885 F.2d 1293, 1300 (6th Cir.1989)); *see*

---

[4] The court also accepts Defendant's argument that his completion of the
attending physician's report in compliance with Michigan law does not, in itself,
constitute "purposeful availment."  *See Michigan Coalition of Radioactive Material
Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1177 (6th Cir. 1992) ("The district court
misconstrued the defendants' compliance with federal law as purposeful actions.").

*also Scullin Steel Co. v. National Ry. Utilization Corp.,* 676 F.2d 309, 314 (8th Cir.1982)

("The use of interstate facilities (telephone, the mail), the making of payments in the

forum state, and the provision for delivery within the forum state are secondary or

ancillary factors and cannot alone provide the 'minimum contacts' required by due

process").

State Farm relies on three cases in support of its assertion of personal

jurisdiction: *Frank v. Wallace*, 662 F.Supp. 876 (E.D. Mich. 1987); *Kmart v. KnitJoy*

*Manufacturing , Inc.*, 542 F.Supp. 1189 (E.D. Mich. 1982); *Hadad v. Lewis*, 382 F.Supp.

1365 (E.D. Mich. 1974).  These three cases are inapposite to the situation in this case

for two salient reasons.  First, in each of these cases, the court only found that the

plaintiff had established a *prima facie* case of jurisdiction.  *See Frank,* 662 F. Supp. at

878; *Kmart*, 542 F.Supp. at 1191; *Hadad*, 382 F.Supp. at 1370 (stating the jurisdiction

determination was "based on the pleadings").  In this case, however, the court has

considered evidence outside of the pleadings and thus State Farm must go beyond a

*prima facie* showing and establish jurisdiction by a preponderance of the evidence.

*Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003).  Second, in each of these cases,

the plaintiff alleged that defendant had *personally* and deliberately reached into

Michigan for purposes of making an allegedly fraudulent communication.  *See Frank,*

662 F. Supp. at 879 (defendant mailed fraudulent forms to plaintiff in Michigan); *Kmart*,

542 F.Supp. at 1191 (fraudulent representations were communicated to Michigan

personnel); *Hadad*, 382 F.Supp. at 1369, 1370 (defendants engaged in national

advertising and entered into fraudulent agreement with Michigan plaintiff).   In this case,

however, Dr. Converse did no more than respond to a few inquiries of State Farm.  Dr. Converse's actions can be considered, at most, "passive availment of Michigan opportunities," which is not enough to satisfy due process.   *See Khalaf v. Bankers & Shippers Ins. Co.*, 273 N.W.2d 811, 819 (Mich. 1978) ("Purposeful availment is more than passive availment of Michigan opportunities.").

State Farm has not satisfied its burden of showing that Dr. Converse deliberately availed himself of the benefits of Michigan law, and thus the court cannot exercise personal jurisdiction over him.  *LAK*, 885 F.2d at 1295.  ("A showing that [defendant] purposefully availed itself of the benefits and protections of Michigan law is essential to the plaintiff's jurisdictional claim").

The court's conclusion is further bolstered by Michigan's policy disfavoring the exercise of personal jurisdiction over out-of-state physicians.  In *Woodward v. Keenan*, 261 N.W.2d 80 (Mich. Ct. App. 1978), the Michigan Court of Appeals held that the court could not exercise personal jurisdiction over an out-of-state physician where the only contact with Michigan was the treatment of the Michigan plaintiff and the mailing of a diagnostic letter into Michigan.  *See id.* at 82.  The court noted: "While we recognize the State's interest in providing a convenient forum for vindicating the rights of its injured residents, this interest cannot override Michigan's legitimate concern that its citizens obtain out-of-state professional care whenever it is needed or desired."  *Id.*  While *Woodward* involved a claim for medical malpractice, the same policy concerns would apply in this case, where State Farm seeks to force Dr. Converse to litigate in a

Michigan forum for, essentially, his treatment of a Michigan resident and mailing of a

diagnostic letter.

Likewise, relying on *Woodward*, the Sixth Circuit has held personal jurisdiction

over an out-of-state physician was inappropriate in *Rann v. McGinnis*, 789 F.2d 374 (6th

Cir. 1986).[5]  In *Rann*, the court found personal jurisdiction lacking where plaintiff based

his argument on the Canadian physician's treatment of Michigan resident, *and

acceptance of Michigan insurance payments for that treatment.  Id.*  The same analysis

would apply in this case.

Here, as in *Woodward* and *Rand*, the court cannot exercise jurisdiction over the

Ohio Defendant, based on the random and attenuated contacts he has made to

Michigan.  The treatment of a Michigan resident and mailing of the May 15, 2002 letter,

even combined with any role he may have had in ClaimsPro's billing procedures, are

---

[5]  In both *Woodward* and *Rand*, the plaintiff relied upon the same provision of Michigan's long-arm statute as State Farm does in this case, M.C.L. § 600.705(2). Section 600.705(2) provides:

Sec. 705. The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

***

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

simply insufficient to satisfy either federal due process or Michigan's policy concerns

regarding out-of-state physicians.[6]

### IV. CONCLUSION

IT IS ORDERED that Defendant's "Motion Pursuant to FRCP 12(b)(2) for

Dismissal Based on Lack of Personal Jurisdiction" [Dkt. # 6] is GRANTED, and this

action is DISMISSED.

IT IS FURTHER ORDERED that Defendant's  "Motion for Dismissal Based on

FRCP 12(b)(6)" [Dkt. # 5] is DENIED AS MOOT.


 S/Robert H. Cleland
 ROBERT H. CLELAND
 UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2005


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, September 30, 2005, by electronic and/or ordinary mail.


 S/Lisa G. Teets
 Case Manager and Deputy Clerk
 (313) 234-5522

---

[6] Because the court has concluded it is without jurisdiction over Defendant
Maurice Converse, M.D., it will not address the merits of his alternative motion to
dismiss for failure to state a claim and will instead deny the motion as moot.

9/30/05:S:\Cleland\JUDGE'S DESK\Even Orders\05-72618.STATEFARM.12(b)(2).EvidentiaryHearing.wpd